UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FARM MANAGEMENT COMPANY, LLC, a Washington limited liability company, | CASE NO. 14-CV-5024-EFS |
| Plaintiff, | **ORDER DENYING IN PART AND DENYING AS MOOT IN PART PLAINTIFF'S MOTION TO STRIKE, DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND ENTERING JUDGMENT IN DEFENDANT'S FAVOR** |
| v. | |
| RURAL COMMUNITY INSURANCE AGENCY, INC., a Minnesota corporation, d/b/a RURAL COMMUNITY INSURANCE SERVICES, | |
| Defendant. | |

Following Plaintiff Farm Management Company, LLC's (FMC) claims for wheat-production losses, an arbitrator upheld Defendant Rural Community Insurance Services' (RCIS) denial of FMC's crop-insurance claims. Whether the arbitration award should be vacated and whether FMC may pursue state-law claims pertaining to RCIS's handling of the claims is now before the Court through the parties' cross motions for summary judgment. After reviewing the record and relevant authority and hearing from counsel,[1] the Court enters summary judgment in RCIS's favor.

---

[1] On April 15, 2015, the Court heard oral argument on the pending motions. FMC's Manager Ted Reid was present, along with FMC's counsel, Elizabeth Tellessen. Jay Carroll and Jeff Dilley appeared on RCIS's behalf.

**A.    Background**

    **1.    Plaintiff's Motion to Strike**

FMC asks the Court to strike portions of RCIS Operational Risk Manager Tonya Rowe's affidavit because the contested paragraphs and exhibits fail to present admissible evidence or facts as required by Federal Rule of Civil Procedure 56 and Local Rule 56.1(e).    RCIS responds that the request to strike is largely moot because FMC conceded many of these facts in the parties' Joint Statement of Uncontroverted Facts, ECF No. 41; in addition, RCIS maintains that Ms. Rowe, as RCIS's operational risk manager, is competent to identify policies issued by RCIS.[2]

In her capacity as RCIS's operational risk manager, Ms. Rowe is competent to review RCIS's business records kept in the regular course of business and to testify as to the dates on which the underlying losses were reported and the causes of loss indicated by FMC in its notices of loss (paragraph 10) and the role of adjusters in working the underlying crop insurance claims (paragraph 12 and exhibit 8). Therefore, the Court denies FMC's motion to strike paragraphs 10 and 12 and exhibit 8.    In addition, the Court denies FMC's motion to strike paragraph 16 because Ms. Rowe's characterization of the February 21, 2013 arbitration hearing as "final" is not an improper legal conclusion but rather her description of this hearing as the

---

[2]  RCIS recognizes it provided an older version of the crop insurance policy and filed an errata, ECF No. 40-1, providing the applicable 2011 version.  In this regard, FMC's motion to strike is denied as moot.

ORDER – 2

last hearing held by the arbitrator.  Because it is undisputed that the subject policies were issued by RCIS and that certain arbitration events occurred on specific dates, the Court denies as moot FMC's motion to strike paragraphs 3 and 14-18.  Finally, because RCIS provided exhibit 7 as background for the underlying claim and not to prove the truth of the matters asserted, the Court denies FMC's motion to strike this exhibit and relating paragraph 11 in Ms. Rowe's affidavit.

In summary, the Court denies in part and denies as moot in part FMC's motion to strike.

**2.    Factual Background[3]**

FMC leases farmland, which has been left fallow, and returns it to agricultural production.  For the 2011 crop year, FMC leased a number of small farms in Walla Walla County, Washington and Umatilla County, Oregon, on which it planted and grew varieties of winter and spring wheat.

In 2011, FMC managed risk associated with its farming operation by purchasing Multiple Peril Crop Insurance (MPCI) from RCIS under policy numbers WA-951-824944 and OR-951-864865.  MPCI policies are authorized and reinsured by the United States Department of Agriculture, Federal Crop Insurance Corporation (FCIC), and sold under

---

[3]  In connection with their motions, the parties submitted a Joint Statements of Uncontroverted Facts.  ECF No. 41.  The Court treats these facts as established and sets them forth in this "Factual Background" section without citation to the record.  *See* Fed. R. Civ. Proc. 56(d).

a Standard Reinsurance Agreement, as authorized by the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1501 *et seq.*, and the regulations attendant thereto, 7 C.F.R Part 400.[4]   MPCI policies are issued on standardized forms that are written by the FCIC and utilized by all approved insurance providers participating in the federal crop insurance program.   Crop insurance can be obtained through either the FCIA or private insurance companies, such as RCIS, which are reinsured by the FCIC if the insurance company abides by standard policy guidelines as to the policy.[5]

Each MPCI policy issued to FMC for the 2011 crop year was comprised of three standardized forms: the Common Crop Insurance Policy (CCIP); the Small Grains Crop provisions; and the Special Provisions of Insurance.   The CCIP, or Basic Provisions, prescribes general insuring terms and conditions common to all crops.   7 C.F.R. § 457.8.   The Small Grains Crop Provisions set forth more detailed insuring terms specific to wheat and other small grains.   *Id*. § 457.101.

FMC had twenty-eight farm units insured by RCIS in 2011.   One unit was in Umatilla County, Oregon, under 2011: MPCI policy number

---

[4] Congress enacted the FCIA to help promote economic stability in agriculture through a system of crop insurance and research.   7 U.S.C. § 1502.

[5] The Risk Management Agency (RMA) supervises the FCIC and has authority over the delivery of crop insurance programs.   7 U.S.C. § 6933(b).

ORDER – 4

OR-951-864865. The other twenty-seven units were in Walla Walla County, Washington, under 2011 MPCI policy number WA-951-824944. FMC, through its manager, Ted Reid, undertook comprehensive seeding, fertilization, pesticide, and, where possible, irrigation programs that complied with industry standards and the needs of each individual farm unit. Despite FMC's best efforts, the production from most of the units did not meet the production guarantees established under the 2011 policies; yet, none of the units suffered total destruction in 2011. FMC determined the losses were attributable to rye infestation, ground squirrels, rust (a plant fungus), and wireworms, which Mr. Reid believes are insured causes of loss.

Due to the losses, FMC made a claim for indemnity for the Oregon Property. FMC also made twenty-two claims for indemnity under its policy for the Washington farm units: 0001-0003; 0001-0005; 0001-0034; 0001-0039; 0001-0041; 0001-0044; 0001-0048; 0001-0052; 0001-0058; 0001-0059; 0001-0060; 0001-0061; 0001-0064; 0001-0065; 0001-0066; 0001-0067; 0001-0068; 0001-0069; 0001-0071; 0001-0072; 0001-0073; and 0001-0074. FMC submitted to RCIS all of the documents and records it had relating to each of the farm units. Mr. Reid drove RCIS adjuster, Jack Wagner, past many of the farm units in 2011. Mr. Reid explained his conclusions regarding the various causes of loss that were impacting the production. RCIS Adjusters Patricia Petty and Jack

///

///

//

/

ORDER – 5

Wagner visited and inspected Units 0001-0039, 0001-0041, and 0001-0052.[6]

On September 8, 2011, RCIS adjuster Dylan Pettyjohn inspected the Oregon fields and noted heavy weeds and cheat grass still visible in the harvested fields.  He further noticed that the stubble was thin and "stringy" in places.  He concluded that the FMC fields were not similar to the fields in the area, which had healthy stubble stand with above average production.

Ultimately, RCIS denied all of FMC's claims on the Washington units and Oregon Property, determining the loss of production was caused by poor farming practices—an uninsured cause.  FMC timely appealed RCIS's denial and the matter was submitted to an arbitrator.  After taking testimony and considering the evidence submitted by FMC and RCIS, the arbitrator denied FMC's claims, albeit on grounds other than poor farming practices.  The arbitrator divided the twenty-three claims of loss into three units: 1) the McAdams Units (in Washington), 2) the other Washington Units ("Walla Walla Units"), and 3) the Oregon Property.  As to the McAdams Units, the arbitrator determined that FMC failed to give timely notice of loss.  As to the Walla Walla Units, the arbitrator determined that FMC failed to provide evidence to support its claim of rust damage or another insured cause of loss.  As to the Oregon Property, the arbitrator determined that FMC's notice of

---

[6] The narratives prepared by RCIS's agents set out its efforts taken with respect to FMC's claims for indemnity on its Washington units.

ORDER - 6

1  rye damage was untimely and that FMC failed to establish rust damage

2  or another insured cause of loss.

3      Thereafter, FMC filed this lawsuit, seeking to vacate the

4  arbitrator's decision and asserting claims for negligence, bad faith,

5  and violation of the Washington Consumer Protection Act.  ECF No. 1.

6  These cross motions for summary judgment were then filed, as well as

7  the motion to strike by FMC.

8  **B.    Standard**

9      Summary judgment is appropriate if the record establishes "no

10 genuine dispute as to any material fact and the movant is entitled to

11 judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party

12 opposing summary judgment must point to specific facts establishing a

13 genuine dispute of material fact for trial.  *Celotex Corp. v. Catrett*,

14 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*

15 *Corp.*, 475 U.S. 574, 586-87 (1986).  If the non-moving party fails to

16 make such a showing for any of the elements essential to its case for

17 which it bears the burden of proof, the trial court should grant the

18 summary-judgment motion.  *Celotex Corp.*, 477 U.S. at 322.

19 **C.    Analysis**

20     FMC asks the Court to find that 1) the Court may conduct a *de*

21 *novo* review of the indemnity claims because the arbitrator's decision

22 is not binding, 2) the arbitrator's decision should be vacated because

23 he exceeded his authority, and 3) FMC's state-law claims of bad faith,

24 negligence, and violation of the Washington Consumer Protection Act

25 are not preempted by the FCIA.  RCIS asks the Court for largely the

26 opposite relief, *i.e.*, asking the Court to decide that the Federal

Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, applies to the Court's review of the arbitrator's decision, affirm the arbitrator's decision, and conclude that the FMC's state-law claims are preempted by the FCIA and/or involve issues that were presented to the arbitrator and thus collateral estoppel applies.

1.  <u>Level of Review</u>

The Ninth Circuit has not answered the question of whether a court's review of an arbitration decision concerning a CCIP is subject to the FAA; although a number of courts have concluded, albeit many with little analysis, that the FAA applies to CCIP arbitration. *See, e.g., Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*, No. 13-11896, 562 Fed. App'x 828, 831 (11th Cir. Apr. 3, 2014) (unpublished opinion); *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1303 (M.D. Fla. 2010); *Bonnie Brae Fruit Farms, Inc. v. Rain & Hail, LLC*, No. 1:13-cv-687, 2013 WL 1833633 (M.D. Pa. May 1, 2013) (unpublished opinion) (no analysis); *Cain Field Nursery v. Farmers Crop Ins. Alliance, Inc.*, No. 4:09-cv-78, 2012 WL 1286657 (E.D. Tenn. April 13, 2012) (unpublished opinion) (no analysis). After reviewing the language of the CCIP, statutory and regulatory provisions, and legislative history, the Court concludes that review of CCIP arbitration is subject to the FAA.

The Court begins with the language of the CCIP. In pertinent part, CCIP section 20 states:

> (b)(3)  If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed no later than one year after the date the arbitration decision was rendered;
>                     . . . .

> (c)  Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3).  Notwithstanding any provision in the rules of the [American Arbitration Association], you and we have the right to judicial review of any decision rendered in arbitration.

ECF No. 40-1 § 20(b).    FMC proposes that this language permits *de novo* judicial review.  The Court disagrees.

The "unless judicial review" language does not permit broader review of the arbitrator's decision than is permitted by the FAA. This policy language does not modify the statutory principle that review of an arbitration award concerning a matter of interstate commerce, such as crop insurance, is governed by the FAA.  *See* 9 U.S.C. § 2; *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013).  The FAA permits only limited review—not *de novo* review—of an arbitration decision.  *See Campbell's Foliage, Inc.*, 562 Fed. App'x at 831 (determining that similar crop insurance policy language calls for FAA-limited judicial review of an arbitration decision); *Great Am. Ins. Co.*, 733 F. Supp. 2d at 1301 (same and listing other cases); *see also Cain Field Nursery*, No. 4:09-cv-78, 2012 WL 1286657 at *5 (E.D. Tenn. Apr. 13, 2012) (same and listing other cases).  Therefore, the purpose of the "unless judicial review" language is for the parties to understand that they are bound by the arbitrator's decision absent a party requesting judicial review of the arbitrator's decision, which will be pursuant to FAA standards.

FMC highlights a comment in CCIP's regulatory history which states, "arbitration is not binding." General Administrative Regulations, Catastrophic Risk Protection Endorsement; Group Risk Plan

of Insurance Regulations for the 2004 and Succeeding Crop Years; and the Common Crop Insurance Regulations, Basic Provision, 69 FR 48652-01 (2004).    At first glance, this language appears to support FMC's position that a court may conduct a *de novo* review of matters involved in the arbitration.    However, on closer examination, the Court finds the regulation's intended purpose was otherwise.    The CCIP continues to require the parties to arbitrate or mediate "[a]ll disputes[, with limited exceptions,] involving determinations made by us."    CCIP § 20(a)(1).    And section 20(c) still mandates that the arbitration decision is binding unless judicial *review* is sought.

The term "review" means to "view, look at, or look over again" or "to look back upon; view retrospectively."    Dictionary.com (April 8, 2015), http://dictionary.reference.com/browse/review?s=t. Accordingly, the Court is to "review" the arbitrator's decision—not begin anew with the analysis of the issues presented to the arbitrator.    Limited judicial review is consistent with the FAA's purpose, which is to "replace judicial indisposition to arbitration with a national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts."    *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (internal quotation omitted) (alterations in original).

Accordingly, based on the CCIP's language and history, the Court determines its review of the arbitrator's decision is limited to those grounds established by the FAA.    In this regard, FMC's summary-judgment motion is denied, and RCIS's summary-judgment motion is granted.

ORDER – 10

    2.   <u>Grounds for Vacatur</u>

FMC maintains that grounds for vacating the arbitrator's decision exist under the FAA. To vacate the arbitrator's decision, FMC must satisfy one of FAA § 10(a)'s subsections. *See U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010); *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1276 (11th Cir. 2009) (describing judicial review of an arbitration award as "narrowly limited" under the FAA). Section 10(a) provides:

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> (1)   where the award was procured by corruption, fraud, or undue means;
>
> (2)   where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)   where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The last subsection—subsection 4—is at issue here. *See Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (recognizing that section 10(a)(4)'s exceeding-of-powers standard is satisfied if the arbitrator's decision is "completely irrational, or

1   exhibits a manifest disregard of law."). FMC contends vacatur is

2   required under § 10(a)(4) because the arbitrator exceeded his power by

3   1) manifestly disregarding RCIS's FCIA requirement to adjust *all*

4   claims for losses; 2) failing to fully and individually analyze each

5   of FMC's loss claims as required by CCIP section 20(a)(2); 3)

6   erroneously interpreting policy provisions pertaining to notice and

7   proof-of-loss requirements.

8       As to FMC's first argument, § 1508 of the FCIA specifies that

9   the FCIC's rules "shall establish standards to ensure that all claims

10  for losses are adjusted, to the extent practicable, in a uniform and

11  timely manner." 7 U.S.C. § 1508(j)(1); *see also* 7 C.F.R. § 400.168(d)

12  (The insurance company "shall utilize only loss adjustment procedures

13  and methods that are approved by" the FCIC.); CCIP § 14(i) (RCIS

14  "recognize[s] and appl[ies] the loss adjustment procedures established

15  or approved by the [FCIC].").

16      Here, the arbitrator heard argument and received evidence.

17  Although FMC had made claims for indemnity for twenty-three farming

18  units, it is undisputed that RCIS did not view all of the units for

19  which a claim of loss was made but only viewed the Oregon Property and

20  three of the Washington units: Units 0001-0039, 0001-0041, and 0001-

21  0052. FMC contends this was a clear violation of the FCIC's

22  requirement that all claims be adjusted. Yet, the FCIA only requires

23  claims be adjusted "to the extent practicable" in a uniform and timely

24  manner. Therefore, even though RCIS reasonably should have inspected

25  each of the units for which a claim of loss was made, the Court cannot

26

ORDER – 12

find, under the FAA's limited standards for review, that the arbitrator exceeded his authority in this regard.

Second, the arbitrator rationally grouped the claims into three units to analyze the claims. The arbitrator's grouping of what he deemed to be similar units complied with CCIP section 20(a)(2), which states: "the arbitrator must provide to you and us a written statement describing the issues in dispute, the factual findings, the determinations and the amount and basis for any award and breakdown by claim for any award." This language does not prohibit the arbitrator from grouping like claims so long as the arbitrator identifies which claims are part of each group. Here, the arbitrator sufficiently identified what claims were part of each group. Accordingly, the Court does not find that the arbitrator exceeded his authority, and FMC's summary-judgment motion is denied in this regard.

FMC's final argument, *i.e.*, that the arbitrator exceeded his authority by interpreting the CCIP's notice and proof-of-loss provisions by requiring notice prior to harvest and placing the burden of proof of an insured loss on FMC, is also unpersuasive. First, as to notice, CCIP section 14 governs the insured's duties in the event of crop damage or loss: 1) a duty to continue to care for the crop, ECF No. 40-1 § 14(a) ("In case of damage or loss of production or revenue to any insured crop, [the insured] must protect the crop from further damage by providing sufficient care."); and 2) a duty to give timely notice, *id.* § 14(b)(1) ("For a planted crop, when there is damage or loss of production, you must give us notice, by unit, within 72 hours of your initial discovery of damage or loss of production

1  (but not later than 15 days after the end of the insurance period,

2  even if you have not harvested the crop."). A failure to comply with

3  the notice requirement results in the loss being "considered solely

4  due to an uninsured cause of loss for the acreage for which such

5  failure occurred, unless we determine that we have the ability to

6  accurately adjust the loss." *Id.* § 14(b)(5). If the insurer

7  determines that it does not have the ability to accurately adjust the

8  loss, the insurer need not pay the indemnity but the insured must pay

9  all owed premiums. *Id.* § 14(a)(5)(ii).

10  The CCIP also specifies that if a crop-insurance dispute

11  involves "in any way . . . a policy or procedure interpretation,

12  regarding whether a specific policy provision or procedure is

13  applicable, how it is applicable, or the meaning of any policy

14  provision or procedure, either you or we must obtain an interpretation

15  from the FCIC." ECF No. 40-1 § 20(a)(1). The FCIC's interpretation

16  is binding in an arbitration, and a "[f]ailure to obtain any required

17  interpretation from FCIC will result in the nullification of any

18  agreement or award." *Id.* § 20(a)(1)(i) & (ii).

19  Here, the arbitrator acknowledged in his decision: "This

20  coverage is governed by federal law with no 'wiggle' room left open

21  for interpretation of the policy, the coverages and its application.

22  In fact, by its very language, such analysis on my part is strictly

23  prohibited." ECF No. 26-4 at 2. With this recognition, the

24  arbitrator then stated, "the burden of proof to establish a covered

25  cause lies strictly with the insured, not RCIS. It is [FMC] who bears

26  the burden of proving compliance with the policy claim requirements

1  and proving that a loss was caused by an insured cause as per the

2  policy." *Id.* As to the "notice" policy provisions, the arbitrator

3  relied on section 14(b)(1) and (b)(2) as requiring FMC to provide

4  notice of crop damage to RCIS within "72 hours of the insured first

5  observing 'damage' or loss of production," ECF No. 26-4 at 3 (emphasis

6  in original), while RCIS had the duty to "verify" the insured cause of

7  loss.

8          The arbitrator's determination that the CCIP required FMC to

9  give notice within 72 hours of the earliest of either crop damage or

10  loss of production concerns the Court.  Section 14(b)(1) permits an

11  insured to give notice within 72 hours of either "initial discovery of

12  damage" or "loss of production."  It does not require the insured to

13  give notice at the earlier of these two occurrences.  Where the CCIP

14  intends to place a timing restriction on two occurrences it did so,

15  *e.g.*, "[t]he initiation of arbitration proceedings must occur within

16  one year of the date we denied your claim or rendered the

17  determination with which you disagree, whichever is later."  ECF No.

18  40-1 § 10(b)(1).  No "first-in-sequence" language was used in CCIP

19  section 14(b)(1).  The arbitrator's interpretation of section 14(b)(1)

20  may well be rational; however, CCIP section 20(a)(1) prohibits an

21  arbitrator from interpreting the language of the CCIP.  This

22  responsibility is solely exercised by the FCIC, and any failure to

23  obtain a "required interpretation from FCIC" results in nullification

24  of the arbitration award."  ECF No. 40-1 § 20(a)(1)(ii); *see also Fed.*

25  *Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947).

26  ///

ORDER – 15

1    Yet, because the arbitrator determined that FMC failed to
2    provide notice within either of these time frames—within 72 hours of
3    the initial discovery of damage *or* loss of production—the Court
4    determines the arbitrator did not erroneously exceed his authority.
5    The arbitrator explained that FMC should have known that it
6    experienced loss of production when it discovered the wireworm damage,
7    which occurred more than 72 hours before FMC provided notice of loss
8    to RCIS.  ECF No. 26-4 at 3 (discussing that loss of revenue can be
9    caused by a problem with production).  Therefore, even though the
10   arbitrator may have erroneously interpreted the CCIP language by
11   inserting a "first-in-sequence" requirement, the Court cannot find the
12   arbitrator's decision that FMC failed to provide RCIS notice of damage
13   or loss within 72 hours of discovery of either damage or loss of
14   production was clearly irrational.

15       FMC's final argument is that the arbitrator's decision that FMC
16   failed to satisfy its burden to establish that loss was caused by an
17   insured loss for the Walla Walla Units and Oregon Property was
18   irrational.  FMC maintains that its responsibility was simply to
19   provide notice of an insured cause of loss and the requested business
20   records but that it was not required, as the arbitrator required, to
21   provide photographs or other evidence to establish an insured cause of
22   loss.  Yet, in addition to requiring the insured to provide notice of
23   damage or loss of production and any records required by CCIP section
24   14(e)(4), the CCIP also requires the insured to "[e]stablish" "[t]hat
25   the loss was caused by one or more of the insured causes specified in
26   the Crop Provisions."  ECF No. 40-1 § 14(e)(4)(iii); *see also* U.S.

Dep't of Ag., Loss Adjustment Manual Standards Handbook ("LAM") (Feb. 2011), ECF No. 26-4 (imposing same "establish" burden on insured), available at http://www.rma.usda.gov/handbooks/25000/2011/11_25010.pdf; LAM, ECF § 121.I (same); LAM § 76(D) ("The insured must establish the cause of loss; the adjuster will: (1) [V]erify the cause of loss during the on-the-farm inspection. (2) . . . If the cause of loss appears to be different from what the insured has stated, document the facts on a Special Report.").

Neither party submitted to the FCIC the question of what "establish" an insured cause of loss means, *i.e.*, does it require the insured to simply identify the insured cause of loss he believes applies and then permit the insurer to verify this insured cause of loss by inspecting the crop and/or field and provided business records, or does it require the insured to provide evidence to support his identified insured cause(s) of loss. FMC may well be correct that the arbitrator placed too much responsibility on it in regard to proof of an insured loss. However, the Court cannot find that the arbitrator's determination of requiring FMC to provide more information to establish an insured cause of loss was irrational. And FMC's difficulty in establishing an insured cause of loss may well be due to its choice to delay providing notice of loss until months after initial observation of crop damage.

In summary, under the FAA's limited review, the Court concludes the FMC failed to establish a basis for vacating the arbitrator's denial of crop-insurance indemnity. FMC's summary-judgment motion is

ORDER - 17

1  denied in this regard, and RCIS's summary-judgment motion is granted

2  in this regard.

3      3.  <u>Preemption</u>

4      Both parties agree the FCIA does not preempt all state-law

5  claims, but the parties disagree as to whether FMC's state-law claims

6  for bad faith, negligence, and violation of WCPA conflict with federal

7  law and are therefore preempted.

8      The U.S. Constitution's Article VI Supremacy Clause affords

9  Congress the power to preempt state law.  Therefore, courts may not

10  "give effect to state laws that conflict with federal laws."

11  *Armstrong v. Exceptional Child Ctr., Inc.*, No. 14-15, 575 U.S. ___,

12  2015 WL 1419423 *3 (March 31, 2015).  Therefore, any state law, "which

13  interferes with or is contrary to federal law, must yield."  *Mutual*

14  *Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2473 (2013) (internal

15  quotation marks omitted).

16      As recognized by the parties, the FCIA does not preempt *all*

17  state law causes of action.  *See Holman v. Laulo-Rowe Agency*, 994 F.2d

18  666, 669 (9th Cir. 1993) (mentioning, in the context of complete

19  preemption and the well-pleaded complaint doctrine, that the FCIA does

20  not preempt all state causes of action pertaining to FCIA-issued crop

21  insurance); *Meyer v. Conlon*, 162 F.3d 1264, 1269 (10th Cir. 1998)

22  ("Congress has not expressed a clear intent to preempt all state law

23  causes of action against private reinsurers."); *Agre v. Rain & Hail*

24  *LLC*, 196 F. Supp. 2d 905, 911 (D. Minn. 2002) ("The simple fact that

25  Congress has established an ordered regulatory scheme is insufficient

26  to preempt all contract claims involving crop insurance.").  Instead

the Court must determine if FMC's asserted claims interfere with or are contrary to the FCIA, its regulations, or CCIP.  The pertinent FCIA provision, § 1506(l), states:

> The [FCIC] may enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business, as determined by the Board. State and local laws or rules shall not apply to contracts, agreements, or regulations of the [FCIC] or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or *to the extent that such laws or rules are inconsistent with* such contracts, agreements, or regulations.

7 U.S.C. § 1506(l) (emphasis added).  Consistent with this statutory language, CCIP section 31 states, "If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued the policy provision will prevail.  State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy."  ECF No. 40-1 § 31.

Accordingly, the Court focuses on the nature and relief requested by FMC through its state-law claims to determine if they interfere with or conflict with the FCIA, related regulations, or CCIP.  In support of its state-law claims, FMC alleges RCIS "did not conduct an indemnity inspection of or make a farm visit to any of the other units in order to verify the causes of loss claimed by FMC," and "denied all of FMC's claims on the Washington Units and Oregon Unit without following the loss adjustment procedures established by the" FCIC.  ECF No. 1 ¶¶ 2.7-2.9.

Assuming that RCIS committed such failures, the Court determines FMC's state-law claims based on such alleged failures are preempted by the FCIA, its related crop-insurance regulations, and the CCIP. The CCIP section requires "[a]ll disputes involving determinations made by" RCIS be "subject[ed] to mediation or arbitration." ECF No. 40-1 § 20(a)(1). Any dispute that FMC had concerning RCIS's claims-handling and denial of insurance was to be brought before the arbitrator. The arbitrator did not identify insufficient claims-handling by RCIS because he concluded that FMC failed to provide sufficient notice and failed to establish an insured cause of loss. Notwithstanding the arbitrator's lack of analysis regarding RCIS's claims-handling, permitting FMC to pursue state-law bad faith, negligence, and WPCA claims pertaining to RCIS's claims-handling and denial of indemnity would interfere with the FCIA and its CCIP.

This may not be true for all state-law claims associated with a crop-insurance policy. *Cf. Meyer v. Conlon*, 162 F.3d 1264, 1269 (10th Cir. 1998) (permitting a state-law claim seeking to enforce an FCIC contract against a reinsurer). However, here the focus of FMC's state-law claims is the claims-handling process and denial of indemnity by RCIS. And FMC did not prevail during arbitration, nor in this Court's review under the FAA of the arbitrator's decision. Accordingly, FMC is not owed an indemnity payment. *Cf.* 7 C.F.R. § 400.176 (permitting a claim of punitive damages or compensatory damages against an insurance company *if the company's failure resulted in the insured receiving a payment in an amount that was less than the amount to which the insured was entitled*); CCIP, ECF No. 40-1 ¶ 20(i)

(same).   Permitting FMC to recover punitive or compensatory damages pursuant to its state-law claims would conflict with the FCIA, its regulations, and the CCIP.   FMC's state-law claims are preempted.[7]

**D.   Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1.   Defendant RCIS's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED.**

2.   Plaintiff FMC's Motion for Partial Summary Judgment, **ECF No. 23**, is **DENIED.**

3.   Plaintiff FMC's Motion to Strike Portions of Affidavit of Tanya L. Rowe, **ECF No. 33**, is **DENIED IN PART AND DENIED AS MOOT IN PART.**

4.   **Judgment** is to be entered in Defendant RCIS's favor.

5.   All hearings and deadlines are **STRICKEN.**

6.   This file shall be **CLOSED.**

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  __21st__  day of April 2015.


                           s/Edward F. Shea
                          EDWARD F. SHEA
                Senior United States District Judge

---

[7] Because the Court determined that FMC's state-law claims are preempted, the Court need not engage in a collateral-estoppel analysis.